JOSHUA STEBBINS (D.C. Bar No. 468542)
SIERRA CLUB ENVIRONMENTAL LAW PROGRAM
50 F Street NW, 8th Floor
Washington, DC 20001
(202) 675-6273
josh.stebbins@sierraclub.org

DOUG HAYES (Colorado Bar No. 39216)
(application for admission *pro hac vice* pending)
ERIC HUBER (Colorado Bar No. 40664)
(application for admission *pro hac vice* pending)
SIERRA CLUB ENVIRONMENTAL LAW PROGRAM
1650 38th Street, Suite 102W
Boulder, CO 80301
(303) 449-5595
doug.hayes@sierraclub.org
eric.huber@sierraclub.org

*Attorneys for Plaintiff Sierra Club*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SIERRA CLUB,** | |
| Plaintiff, | **Case No. 1:13-cv-1239** |
| vs. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| **UNITED STATES ARMY CORPS OF ENGINEERS,** | Freedom of Information Act |
| Defendant. | Administrative Procedure Act |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1. This case challenges the U.S. Army Corps of Engineers' (the "Corps") failure to provide critical information to the public regarding the proposed Flanagan South tar sands pipeline pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

1
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

2. The Flanagan South pipeline would stretch almost 600 miles across four states, from - Flanagan, Illinois, to Cushing, Oklahoma. The construction and operation of the pipeline requires a right-of-way at least 50 to 100 feet wide to be cleared through everything in its path, including sensitive water resources, forested areas, private property, and recreational areas. Once built, the pipeline would initially transport approximately 600,000 barrels per day of heavy tar sands crude oil, creating a serious risk of oil spills that would contaminate waterways and threaten the health and safety of nearby communities.

3. The Flanagan South pipeline requires authorization by the Army Corps of Engineers under Section 404 of the Clean Water Act due to over a thousand water bodies that must be dredged and/or filled along the pipeline route. Enbridge, the project proponent, has submitted "pre-construction notifications" ("PCNs") to proceed under Nationwide Permit 12, a nationwide 404 permit authorizing utility projects that would result in less than 1/2-acre of loss of waters of the United States. The PCNs contain important information about the pipeline, including detailed maps of the pipeline route showing where the pipeline would be in relation to communities and sensitive water resources, and information about the type and amount of wetlands and forested areas that will be lost as a result of pipeline construction.

4. The Sierra Club requested the PCNs that Enbridge submitted to four Corps district offices. The Sierra Club has members that live near, recreate, and/or otherwise use the area that stand to be affected by the Flanagan South pipeline, and the PCNs are crucial for a full understanding of the pipeline's impacts and areas threatened by a tar sands oil spill.

5. Each of the four Corps offices denied Sierra Club's FOIA requests by claiming the "deliberative process" privilege contained in FOIA's Exemption 5. However, the "deliberative

process" privilege does not apply to PCNs submitted to the Corps by a private party such as Enbridge.

6. The Sierra Club appealed the Corps' decisions, and the Corps has failed to rule on the appeals within the statutory time period.

7. The Corps is evaluating the Flanagan South pipeline and is expected to issue a decision at any time, and in fact some Corps districts may have already verified the project under Nationwide Permit 12, yet the public still has been unable to learn even the most basic facts about the pipeline and its impacts.

8. Without other recourse, Sierra Club now files this complaint to compel the Corps to immediately disclose all documents responsive to Sierra Club's FOIA requests.

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B), (a)(6)(E)(iii) ("FOIA"); 28 U.S.C. § 1331 (questions of federal law); 5 U.S.C. §§ 701-06 ("APA"), and 28 U.S.C. §§ 2201-2202 (power to issue declaratory judgments in cases of actual controversy, and to issue further relief based on such judgments).

10. Venue is proper in this judicial district and in this Court pursuant to 28 U.S.C. §1391(e)(1)(A), because Defendant U.S. Army Corps of Engineers is an agency of the United States, and resides in this judicial district; and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

### Plaintiff

11. Plaintiff Sierra Club is the nation's oldest grassroots organization. It has approximately 600,000 members nationwide and is dedicated to the protection and preservation of the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

environment. Since its founding in 1892, Sierra Club has pursued its mission to enjoy, explore, and protect the planet.

12. One of Sierra Club's main national initiatives, the Beyond Oil Campaign, tackles the pressing problems of global warming, air pollution, water pollution, and our national dependence on non-renewable energy sources such as oil. A central goal of this initiative is decreasing the destructive impact of tar sands extraction and refining, educating the public on foreign and domestic tar sands projects, and ensuring that government decisions relating to energy development and infrastructure projects are carried out in a transparent manner.

13. The Sierra Club is also concerned with the grave environmental and public safety impacts of oil pipeline spills, and works to improve pipeline safety, hold pipeline operators accountable for oil spills, and ensure that the risks of oil spills are fully analyzed before pipelines are built.

14. The Sierra Club has approximately 600,000 members nationwide, including nearly 23,000 members in Illinois, over 8,000 members in Missouri, over 4,000 members in Kansas, and over 3,000 members in Oklahoma. Many of these members live in communities adjacent to the pipeline and/or own property that would be directly and/or indirectly impacted by the construction and operation of the pipeline.

**Defendant**

15. Defendant United States Army Corps of Engineers (the "Corps") is the federal agency charged with administering permits under Section 404 of the CWA for discharge of dredged or fill material into the waters of the United States. The Corps is headquartered in Washington, D.C. The Corps has district offices throughout the country, including in Kansas City, Missouri ("Kansas City"), Tulsa, Oklahoma ("Tulsa"), Rock Island, Illinois ("Rock Island"), and St. Louis, Missouri ("St. Louis").

4
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## STATUTORY AND REGULATORY BACKGROUND

### The Freedom of Information Act

16. The Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et. seq.*, is designed to provide the public with the information it needs to meaningfully engage with government decision making, and sets a basic policy of full agency disclosure.

17. President Obama has ordered that FOIA "be administered with a clear presumption: In the face of doubt, openness prevails." Memorandum for the Heads of Executive Departments and Agencies 74 Fed. Reg. 4,683 (Jan. 21, 2009). He ordered that all agencies "should take affirmative steps to make information public." *Id.*

18. The Corps' FOIA regulations state that "[t]he public has a right to information concerning the activities of its Government. Army policy is to conduct its activities in an open manner and provide the public with a maximum amount of accurate and timely information concerning its activities, consistent always with the legitimate public and private interests of the American people." 32 C.F.R. § 518.6(a).

19. FOIA requires records to be made "promptly available" upon request. 5 U.S.C. §552(a)(3)(A)(ii). FOIA requires agencies to process requests with due diligence at all times. *Id. at* §552(a)(6)(D)(iii).

20. The Corps is required to respond to FOIA requests within 20 working days. *Id.* at §552(a)(6)(A); 32 C.F.R. § 518.8(d)(2)(vi).

21. FOIA contains nine categories of documents that agencies are not required to release to the public. *Id. at* §552(b). If an agency claims that requested documents fall under one of the exemptions, FOIA allows requestors to appeal that decision to the agency. *Id. at* §552(a)(6)(A). The Corps must make "a determination with respect to any appeal within twenty days (excepting

Saturdays, Sundays, and legal public holidays) after the receipt of such appeal." *Id. at* §552(a)(6)(A)(ii); see also 32 C.F.R. § 518.8(d)(2)(vi).

22. The twenty-day period during which the Corps must make a determination on an appeal "shall commence on the date on which the request is first received by the appropriate component of the agency, but in any event not later than ten days after the request is first received by any component of the agency that is designated in the agency's regulations under this section to receive requests under this section." *Id. at* §552(a)(6)(A)(ii)

23. A person submitting a FOIA request "shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions" contained in FOIA. 5 U.S.C.A. § 552(a)(6)(c)(i).

### The Administrative Procedure Act

24. The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, provides for judicial review of agency actions such as those at issue here. A reviewing court shall hold unlawful and set aside any agency actions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5. U.S.C. § 706(2)(A).

### The Clean Water Act

25. The CWA was enacted by Congress in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve this goal, § 404 of the CWA prohibits the discharge of any pollutant, including dredged spoil or other fill material, into navigable waters unless authorized by a permit. *Id.* § 1344.

26. Section 404 of the CWA gives the Corps primary responsibility for permitting construction activities that involve dredge and fill of U.S. waters. 33 U.S.C. § 1344. The Corps

oversees the § 404 permit process and must comply with guidelines promulgated by the U.S. Environmental Protection Agency ("EPA"), which are incorporated into the Corps' own regulations. Id. § 1344(b)(1); 33 C.F.R. §§ 320.4(b)(4) (2010), 325.2(a)(6) (2010). The guidelines provide that no discharge of dredged or fill material shall be permitted for an individual project: (1) if there is a practicable alternative to the proposed discharge; (2) if the discharge causes or contributes to violations of applicable state water quality standards; (3) if the discharge will cause or contribute to significant degradation of the environment; and (4) unless all appropriate steps have been taken to minimize potential adverse impacts. 40 C.F.R. § 230.10 (2010).

27. Public participation plays an important role in CWA permitting decisions. The CWA provides in its general policy section that "public participation in the development . . . of any . . . program established by the Administrator. . . under this chapter shall be provided for, encouraged, and assisted by the Administrator . . ." 33 U.S.C. § 1251(e). The Corps is required to provide "notice and opportunity for public hearings" before issuing § 404 permits. 33 U.S.C. § 1344(a).

28. When issuing an individual § 404 permit for a specific project, the Corps must analyze the project's impacts pursuant to the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332(2)(C), and follow all NEPA regulations that require, *inter alia*, public notice and opportunity for public comment. *See*, e.g., 40 C.F.R. §§ 1500.1(b) (2010) ("public scrutiny [is] essential"), § 1500.2(d) (2010) (the agency must "encourage and facilitate public involvement"), § 1506.6 (2010) (the agency must "[m]ake diligent efforts to involve the public" in preparing environmental documents, give "public notice of ... the availability of environmental documents

so as to inform those persons ... who may be interested or affected," and "solicit appropriate information from the public").

29. An alternative to the individual permit process is the nationwide permit program. Section 404(e) allows the Corps to, "after notice and opportunity for public hearing, issue general permits on a State, regional, or nationwide basis for any category of activities involving discharges of dredged or fill material if the Secretary determines that the activities in such category are similar in nature, will cause only minimal adverse environmental effects when performed separately, and will have only minimal cumulative adverse effect on the environment." 33 U.S.C. § 1344(e)(1).

30. Projects authorized by NWPs do not need individual § 404 permits and ordinarily do not undergo the more comprehensive and transparent site-specific environmental and public interest review that individual § 404 permits require. 33 C.F.R. § 323.3(a).

31. The Corps issued NWPs for 52 categories of activities on February 21, 2012. 77 Fed. Reg. 10184 (Feb. 21, 2012). One of those is Nationwide Permit 12 ("NWP 12"), which authorizes "[a]ctivities required for the construction, maintenance, repair, and removal of utility lines and associated facilities [including oil pipelines] in waters of the United States, provided the activity does not result in the loss of greater than 1/2-acre of waters of the United States for each single and complete project." 77 Fed. Reg. 10271.

32. However, the definition of "single and complete linear project" reads: "that portion of the total linear project proposed or accomplished by one owner/developer or partnership or other association of owners/developers that includes all crossings of a single water of the United States (i.e., a single waterbody) at a specific location." 77 Fed. Reg. 10290.

33. NWP 12 thus allows linear utility projects to use NWP 12 separately for each individual water crossing. There is no limit to the number of times a single linear utility line can use NWP 12, nor is there a limit to the number of acres of U.S. waters that can be lost as a result of the utility project.

34. "Single and complete linear projects" do not have to meet the "independent utility" requirement in order to use NPW 12 multiple times, while "single and complete linear projects" do.

35. NWP 12 requires a permittee to submit a preconstruction notification (PCN) to the Corps district engineer before commencing the activity if the project meets any one of seven criterion. 77 Fed. Reg. 10272. For example, a PCN is required if the activity involves mechanized land clearing in a forested wetland, or if the activity would result in the loss of greater than 1/10-acre of waters of the United States. *Id*. (NWP 12 also incorporates the PCN requirements contained in general condition 31). If none of the seven criteria are met, a project proponent may commence with the activity under NWP 12 without notifying the Corps or the public. When a permittee submits a PCN, the district engineer (DE) will determine whether the PCN is complete and/or request any additional information from the permittee within 30 calendar days. 77 Fed. Reg. 10286. The permittee may commence with the activity if it either receives written approval from the DE or if 45 days have passed and the permittee has not received written notice from the DE. *Id*.

## FACTUAL BACKGROUND

### The Flanagan South Pipeline

36. Enbridge's proposed Flanagan South pipeline, if approved by the Corps, would consist of an approximately 600-mile pipeline that would transport 600,000 barrels of crude oil from

Flanagan, Illinois to Cushing, Oklahoma. The pipeline would be partially built in or near an existing pipeline right-of-way for the "Spearhead" oil pipeline; and partially built outside of the existing right-of-way.

37. The Flanagan South pipeline would require the filling of numerous waterways that are considered "waters of the United States," and thus the pipeline requires a permit under § 404 of Clean Water Act.

38. Upon information and belief, the Project would involve over a thousand water crossings across four Corps districts. Within the portion of the Kansas City District that is located in Missouri, the Project would cross approximately 334 streams and 158 jurisdictional wetlands. Within the portion of the Rock Island District that is located in Missouri, the Project would cross approximately 40 jurisdictional wetlands and 114 other waters of the United States. Within the portion of the Rock Island District that is located in Illinois, the Project would cross approximately 89 jurisdictional wetlands and 306 other waters of the United States. Within the St. Louis District, the Project would cross approximately 44 jurisdictional wetlands and 121 other waters of the United States. Accordingly, across all of these districts the Project would cross approximately 331 wetlands and approximately 875 other waters of the United States. Upon information and belief, the impacts of the Project as a whole would be even greater.

39. The Flanagan South pipeline would result in the permanent loss of approximately 24.91 acres of wetlands in Missouri, and would impact nine impaired water bodies in Missouri. The pipeline would also cross, and impact, many other sensitive wetland and recreational areas, including the Marais des Cygnes State Wildlife Area in Kansas.

40. Enbridge has submitted "preconstruction notifications" ("PCNs") for the Flanagan South pipeline to the Corps' district offices in Rock Island, St. Louis, Tulsa, and Kansas City, seeking verification of the pipeline under Nationwide Permit 12.

41. The PCNs contain important and detailed information about the pipeline, including the pipeline route and the waterways and forested areas that would be affected. The Corps has refused to share this information with the Sierra Club or otherwise make it available to the public.

## Sierra Club's Freedom of Information Act Requests

42. In April and May of 2013, Sierra Club contacted the Corps district offices in Kansas City, Tulsa, St. Louis, and Rock Island, and requested copies of Enbridge's application materials for the Flanagan South pipeline. The Corps informed Sierra Club that they must file requests under the Freedom of Information Act ("FOIA") to access those documents.

43. Accordingly, on May 16, 2013, the Sierra Club submitted FOIA requests to the Kansas City, Tulsa, St. Louis, and Rock Island Corps district offices pursuant to the FOIA, 5 U.S.C. § 552, seeking the PCNs that Enbridge submitted to the Corps offices and other information about the Flanagan South pipeline.

44. Each of the four FOIA requests sought "all existing and future preconstruction notifications (PCNs) submitted by Enbridge for the proposed 'Flanagan South' pipeline."

## Rock Island

45. On June 20, 2013, the Corps district office in Rock Island, Illinois, responded to the Sierra Club's FOIA request. The response stated that the requested documents are exempt from release under FOIA Exemption 5, which provides for withholding for release "inter-agency or intra agency memoranda or letters which would not be available by law other than an agency in

litigation with the agency." 5 U.S.C. § 552(b)(5). Specifically, the Corps stated that the requested documents are not releasable under the deliberative process privilege of Exemption 5.

46. On June 27, 2013, the Sierra Club submitted an appeal of the Rock Island office's decision, arguing that the deliberative process privilege of Exemption 5 only applies to inter-agency or intra-agency deliberative documents, but does not apply to documents such as PCNs that were prepared by an outside party and submitted to an agency.

47. The Rock Island office confirmed that it received Sierra Club's appeal on July 2, 2013.

48. As of August 13, 2013, the Corps has not responded to Sierra Club's appeal and has thus missed its deadline pursuant to 5 U.S.C. §552(a)(6)(A)(ii) and 32 C.F.R. § 518.8(d)(2)(vi).

## **Kansas City**

49. On June 20, 2013, the Corps district office in Kansas City responded to the Sierra Club's FOIA request. The response stated that the requested documents are exempt from release under FOIA Exemption 5, which provides for withholding for release "inter-agency or intra agency memoranda or letters which would not be available by law other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Specifically, the Corps stated that the requested documents are not releasable under the deliberative process privilege of Exemption 5.

50. On June 27, 2013, the Sierra Club submitted an appeal of the Kansas City office's decision, arguing that the deliberative process privilege of Exemption 5 only applies to inter-agency or intra-agency deliberative documents, but does not apply to documents such as PCNs that were prepared by an outside party and submitted to an agency.

51. The Kansas City Corps confirmed that it received Sierra Club's appeal on June 27, 2013; that it forwarded the appeal to Corps headquarters on July 2, 2013; that Corps headquarters forwarded the to the Army's General Counsel on or about July 22, 2013.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

52. As of August 13, 2013, the Corps has not responded to Sierra Club's appeal and has thus missed its deadline pursuant to 5 U.S.C. §552(a)(6)(A)(ii) and 32 C.F.R. § 518.8(d)(2)(vi).

### Tulsa

53. On June 27, 2013, the Sierra Club sent a follow-up letter to the Tulsa district office stating that more than 20 days had passed without a response, in violation of 5 USC 552 (a)(6)(A), and requesting a response.

54. On July 1, 2013, the Corps district office in Tulsa responded to the Sierra Club's FOIA request by stating that the request had been forwarded to the Corps' Southwestern Division office in Dallas, Texas.

55. On July 2, 2013, the Corps district office in Dallas responded to the Sierra Club's FOIA request. The response stated that the requested documents are exempt from release under FOIA Exemption 5, which provides for withholding for release "inter-agency or intra agency memoranda or letters which would not be available by law other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Specifically, the Corps stated that the requested documents are not releasable under the deliberative process privilege of Exemption 5.

56. On July 8, 2013, the Sierra Club submitted an appeal of the Dallas office's decision, arguing that the deliberative process privilege of Exemption 5 only applies to inter-agency or intra-agency deliberative documents, but does not apply to documents such as PCNs that were prepared by an outside party and submitted to an agency.

### St. Louis

57. On June 27, 2013, the Sierra Club sent a follow-up letter to the St. Louis district office stating that more than 20 days had passed without a response, in violation of 5 USC 552 (a)(6)(A), and requesting a response.

58. On July 8, 2013, the Corps district office in St. Louis responded to the Sierra Club's FOIA request. The response stated that the requested documents are exempt from release under FOIA Exemption 5, which provides for withholding for release "inter-agency or intra agency memoranda or letters which would not be available by law other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Specifically, the Corps stated that the requested documents are not releasable under the deliberative process privilege of Exemption 5.

59. On July 15, 2013, the Sierra Club submitted an appeal of the St. Louis office's decision, arguing that the deliberative process privilege of Exemption 5 only applies to inter-agency or intra-agency deliberative documents, but does not apply to documents such as PCNs that were prepared by an outside party and submitted to an agency.

60. On August 9, 2013, the Corps' Office of General Counsel notified Sierra Club that it had received all four FOIA appeals, that they had been aggregated and would likely be processed together, and that the estimated time for completion of the FOIA appeals was 6-8 weeks.

## **CLAIMS FOR RELIEF**

### **COUNT I**

**VIOLATION OF THE FREEDOM OF INFORMATION ACT-CONSTRUCTIVE DENIAL/ UNLAWFUL WITHHOLDING**

61. The allegations made in all preceding paragraphs are realleged and incorporated by this reference.

62. In response to their FOIA request and appeal, the Corps has withheld the requested information, invoking FOIA's Exemption 5. U.S.C. §§ 552(b)(5).

63. The provisions of FOIA's Exemption 5 do not apply to the information being withheld from Plaintiff in this case and thus FOIA's Exemption 5 is inapplicable to bar the information's release.

64. Plaintiffs have a statutory right to the records they seek, and there is no legal basis for Defendant to assert that any of FOIA's nine disclosure exemptions apply. *See* 5 U.S.C. § 552(b)(l)-(9).

65. Plaintiffs have a statutory right to have the Corps process their FOIA request and appeal in a manner which complies with FOIA.

66. Defendant has violated Plaintiff's rights under FOIA by unlawfully withholding information responsive to Plaintiff's FOIA request.

67. Defendant has violated Plaintiffs' rights under FOIA by not providing a final determination on Plaintiff's FOIA request within the time mandated by the Act.

68. Based on the nature of Plaintiffs' professional activities, they will undoubtedly continue to employ FOIA's provisions in information requests to Defendant in the foreseeable future.

69. Plaintiffs' professional activities will be adversely affected if Defendant is allowed to continue violating FOIA's response deadlines as it has in this case.

70. Unless enjoined and made subject to a declaration of Plaintiffs' legal rights by this Court, Defendant will continue to violate the rights of Plaintiffs to receive public records under the FOIA.

71. Plaintiffs are entitled to reasonable costs of litigation, including attorneys' fees and costs pursuant to FOIA. 5 U.S.C. § 552(a)(4)(E).

## COUNT II

### VIOLATION OF THE FREEDOM OF INFORMATION ACT: DECISION DEADLINE VIOLATION

72. The allegations made in all preceding paragraphs are realleged and incorporated by this reference.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

73. Plaintiffs have a statutory right to have Defendant process their FOIA request and appeal in a manner which complies with FOIA. Plaintiffs' rights in this regard were violated when the Defendant unlawfully delayed its final determination of their information request and appeal beyond the determination deadlines imposed by the FOIA. 5 U.S.C. §§ 552(a)(6)(A)(ii).

74. Defendant is unlawfully withholding public disclosure of information sought by Plaintiffs, information to which they are entitled and for which no valid disclosure exemption applies.

75. Based on the nature of Plaintiffs' organizational activities, they will undoubtedly continue to employ FOIA's provisions in information requests to Defendant in the foreseeable future.

76. Plaintiffs' organizational activities will be adversely affected if Defendant is allowed to continue violating FOIA's response deadlines as it has in this case.

77. Unless enjoined and made subject to a declaration of Plaintiffs' legal rights by this Court, Defendant will continue to violate the rights of Plaintiffs to receive public records under the FOIA.

78. Plaintiffs are entitled to reasonable costs of litigation, including attorney fees pursuant to FOIA. 5 U.S.C. § 552(a)(4)(E).

## COUNT III

## VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT

79. The allegations made in all preceding paragraphs are realleged and incorporated by this reference.

80. Defendant has failed to act in an official capacity under color of legal authority by failing to comply with the mandates of FOIA consequent to its failure and refusal to issue a timely final determination on Plaintiffs' information request and appeal.

81. Defendant has unlawfully withheld agency action by failing to comply with the mandates of FOIA consequent to its failure and refusal to: (1) provide to Plaintiffs documents responsive to their information request and appeal that are not within the scope of any of FOIA's disclosure exemptions, and; (2) issue a timely final determination on Plaintiffs' administrative request and appeal.

82. Plaintiffs have been adversely affected and aggrieved by the Defendant's failure to comply with the mandates of FOIA. Defendant's failure and refusal to: (1) provide to Plaintiffs documents responsive to their information request and appeal that are not within the scope of any of FOIA's disclosure exemptions, and; (2) issue a timely final determination on Plaintiffs' administrative request and appeal, has injured Plaintiffs' interests in public oversight of governmental operations and constitute a violation of Defendant's statutory duties under the APA.

83. Plaintiffs have suffered a legal wrong as a result of the Defendant's failure to comply with the mandates of FOIA. Defendant's failure and refusal to: (1) provide to Plaintiffs documents responsive to their information request and appeal that are not within the scope of any of FOIA's disclosure exemptions, and; (2) issue a timely final determination on Plaintiffs' administrative request and appeal, has injured Plaintiffs' interests in public oversight of governmental operations and constitute a violation of Defendant's statutory duties under the APA.

84. Defendant's failure and refusal to: (1) provide to Plaintiffs documents responsive to their information request and appeal that are not within the scope of any of FOIA's disclosure exemptions, and; (2) issue a timely final determination on Plaintiffs' administrative request and appeal, has injured Plaintiffs' interests in public oversight of governmental operations and constitute a violation of Defendant's statutory duties under the APA, constitutes agency action unlawfully withheld and unreasonably delayed and is therefore actionable pursuant to the APA, 5 U.S.C. § 706(1).

85. Alternatively, Defendant's failure and refusal to: (1) provide to Plaintiffs documents responsive to their information request and appeal that are not within the scope of any of FOIA's disclosure exemptions, and; (2) issue a timely final determination on Plaintiffs' administrative request and appeal, has injured Plaintiffs' interests in public oversight of governmental operations and constitute a violation of Defendant's statutory duties under the APA, is in violation of FOIA's statutory mandates and is therefore arbitrary, capricious, or an abuse of discretion and not in accordance with law and is therefore actionable pursuant to the APA, 5 U.S.C. § 706(2).

86. Plaintiffs are entitled to judicial review under the Administrative Procedure Act 5 U.S.C. §§ 702, 706.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to find for Plaintiff and to enter a judgment:

    a. Declare Defendant's failure to disclose the documents requested by Plaintiffs to be unlawful under the FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), as well as agency action unlawfully withheld and unreasonably delayed, 5 U.S.C. § 706(1), and/or arbitrary,

capricious, an abuse of discretion, and not in accordance with law, 5 U.S.C. § 706(2);

b.     Declare Defendant's failure to timely make a determination on Plaintiffs' information request and appeal to be unlawful under the FOIA, 5 U.S.C. § 552(a)(6)(A)(ii), as well as agency action unlawfully withheld and unreasonably delayed, 5 U.S.C. § 706(1), and/or arbitrary, capricious, an abuse of discretion, and not in accordance with law, 5 U.S.C. § 706(2);

c.      Issuing preliminary and permanent injunctions ordering the Corps to immediately provide all records responsive to Sierra Club's FOIA requests;

c.     Awarding Sierra Club its reasonable attorney fees and costs in this action pursuant to 5 U.S.C.A. § 552(a)(4)(E)(i);

d.     Providing for any other such relief as the Court deems just and appropriate.

                                              Dated: August 13, 2013

                                              Respectfully submitted:

                                              /s/ Joshua Stebbins
                                            JOSHUA STEBBINS (D.C. Bar No. 468542)
                                            SIERRA CLUB ENVIRONMENTAL LAW PROGRAM
                                            50 F Street NW, 8th Floor
                                            Washington, DC 20001
                                            Telephone: (202) 675-6273
                                            Facsimile: (202) 547-6009

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

          /s/ Doug Hayes
DOUG HAYES, Colo. Bar No. 39216
(application for admission *pro hac vice* pending)
ERIC E. HUBER, Colo. Bar No. 40664
(application for admission *pro hac vice* pending)
SIERRA CLUB
1650 38th Street, Suite 102W
Boulder, Colorado 80301
Telephone: (303) 449-5595
Facsimile: (303) 449-6520

*Attorneys for Plaintiff Sierra Club*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF